**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>      Plaintiff,<br><br>      and<br><br>REGINALD BAILEY, KENNETH BRISCO, OLIVER DEAN, MELVIN EDWARDS, JOHN ELLIS, RONNIE FORD, BENITA GREEN-RILEY, MICHAEL JOHNSON, ANTHONY JORDAN, MIRANDA LESTER, SANDRA McNEELY, EDGAR MEDLEY, TIMOTHY PRICE, ALONZO STUDSTILL, PAUL THOMAS, RANDY THOMPSON, SHREE WASHINGTON, GEORGE WHITE, and SANDRA WILLIAMS,<br><br>      Intervening-Plaintiffs,<br><br>      v.<br><br>DHL EXPRESS (USA), INC.,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 10 C 6139<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On December 9, 2010, Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a First Amended Complaint alleging race discrimination claims in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII") and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, against Defendant DHL Express (USA), Inc. ("DHL"). On December 10, 2010, Intervening-Plaintiffs filed an Intervening Complaint for

violations of Title VII and 42 U.S.C. § 1981 against DHL. Before the Court is DHL's Motion for Summary Judgment or Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants in part and denies in part DHL's summary judgment motion.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts – not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments,

and conjecture"). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. Also, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon,* 401 F.3d at 809-10; *see also* Fed.R.Civ.P. 56(e)(2). Finally, it is well established that "district courts are entitled to expect strict compliance with Local Rule 56.1." *Raymond v. Ameritech Corp.,* 442 F.3d 600, 604 (7th Cir. 2006). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

### A. Parties

The EEOC brings this lawsuit for race discrimination based on charges of discrimination filed with the EEOC by at least 24 individuals who were former DHL employees. (R. 30, Def.'s Rule 56.1 Stmt. Facts. ¶ 1.) More specifically, the EEOC brings this action on behalf of the 24 individuals and others similarly situated who were employed at DHL's Lisle, Alsip, and Franklin Park, Illinois facilities as pick-up and delivery employees (hereinafter "Charging Parties"). (*Id.* ¶ 2.) The Intervening-Plaintiffs are bringing individual, separate claims for employment discrimination based on charges of discrimination filed with the EEOC. (*Id.* ¶ 3.) DHL is a wholly-owned and separately-incorporated subsidiary of Deutsche Post, AG ("Deutsche Post"), which is an international express and logistics enterprise that does business in the State of Illinois. (*Id.* ¶ 4.)

### B. DHL Restructuring

On November 10, 2008, Deutsche Post announced that it was discontinuing its domestic air and ground services – while continuing its international shipping operations – in the

United States. (*Id*. ¶ 5.) As a part of the restructuring process, in July 2008, DHL began laying off employees, which continued through March 2009. (*Id*. ¶¶ 6, 8.) The International Brotherhood of Teamsters, Local 705 ("Local 705") represented the majority of DHL's Chicago area employees for the purpose of collective bargaining, including one bargaining unit for pick-up and delivery employees. (*Id*. ¶ 9.) All of the Charging Parties are or were Local 705-represented pick-up and delivery couriers employed in the Chicago area DHL facilities. (*Id*. ¶ 10.) Specifically, the April 1, 2008 through March 31, 2009 collective bargaining agreement ("CBA") between DHL and Local 705 covered the pick-up and delivery employees in the Chicago area facilities. (*Id*.)

After Deutsche Post's November 10, 2008 announcement, the statutory bargaining representatives of the affected employees, including Local 705, sought to bargain with the company about the effects of the restructuring on union-represented employees. (*Id*. ¶ 11.) After negotiations in November and December 2008, DHL and Local 705 entered into agreements on December 5, 2008 addressing all effects-related matters ("Effects Agreement"). (*Id*.) DHL's effects bargaining agreement with Local 705 made separation/severance benefits available to the affected employees. (*Id*.) Before the effects bargaining negotiations began, the CBA did not provide for any such separation/severance payments. (*Id*. ¶ 12.)

### C. Voluntary Separation Programs

As part of the Effects Agreement, DHL and Local 705 agreed to four-week and ten-week voluntary separation programs ("VSPs"), as well as separation benefits for those employees who did not choose to participate in the VSPs or who sought to do so, but were not selected for participation because of their lower seniority in the bargaining unit. (*Id*. ¶ 14.) Employees

participating in a VSP would receive the appropriate equivalent of straight-time pay, as well as continued pension and health and welfare benefits during the particular time period, which was ten or four weeks. (*Id.*) To receive those benefits, the employee would execute a waiver and general release, voluntarily resign her employment, and waive her recall rights under the applicable CBA. (*Id.*) DHL would lay off those employees who were not retained and who decided not to resign, but these employees would maintain their contractual recall rights under the CBA. (*Id.*)

Local 705 negotiated the terms of the VSPs agreeing to each and every aspect and term of the effects agreements, the VSPs, and the form and content of the releases, including eligibility, the amount of consideration, bid procedure, resignation provisions, the form of the release, the amount of time employees would be given to decide whether to enter into a release, and the revocation period. (*Id.* ¶ 13.) The agreements allowed the pick-up and delivery employees the opportunity to obtain the additional consideration negotiated and agreed to by DHL and Local 705 in exchange for a release of employment claims, including employment discrimination claims. (*Id.*) In exchange for this consideration, these employees were provided separation benefits that they would not have otherwise been provided. (*Id.*)

        **1.**    **Ten-Week VSP**

DHL posted a general bid for pick-up and delivery employees interested in the ten-week VSP. (*Id.* ¶ 15.) After describing the program to eligible employees, interested employees submitted an application to participate and DHL selected the 325 most senior employees who bid for this program. (*Id.*) Participating employees would, if certain conditions were satisfied, receive a separation payment equivalent to ten weeks' straight-time pay, as well as continued

5

pension and health and welfare benefits for that period. (*Id.* ¶ 16.) To participate, eligible employees would have to execute a general waiver and release and employees who elected to participate in the program would voluntarily resign their employment and waive their right to recall under the CBA. (*Id.* ¶ 17.) The release provided a general waiver of claims including, but not limited to, claims for employment discrimination. (*Id.*) Employees who decided not to participate in any of the VSPs would either retain their recall rights if already laid off, or, if not, would continue their employment or could be subject to layoff and recall depending upon their bargaining unit seniority. (*Id.* ¶ 18.) The employees who opted to accept the ten-week VSP resigned their employment and gave up their contractual recall rights on December 19, 2008 or January 9, 2009. (*Id.* ¶ 19.) Six of the employees who initially signed a ten-week separation agreement later revoked their acceptance of the agreement. (*Id.* ¶ 20.)

### 2. Four-Week VSP for Employees Laid Off Prior to Effects Agreement

The employees who were not eligible for the ten-week program and were regular full-time Local 705 pick-up and delivery employees laid off between August 25, 2008 and December 5, 2008 – the date of the Effects Agreement – were eligible to receive four weeks of straight-time pay if they voluntarily resigned their employment, gave up their contractual recall rights, and executed a general waiver and release. (*Id.* ¶ 21.) DHL gave the employees who were eligible for the four-week VSP until December 22, 2008 to execute the release and seven days thereafter to revoke their acceptance. (*Id.*) With respect to this four-week VSP, Local 705 agreed to inform employees about the program, including a letter that the Local 705 bargaining unit employees received as an attachment to their personal copy of the Effects Agreement. (*Id.* ¶ 22.) Four employees, who initially signed a four-week separation agreement, later revoked their

6

acceptance of the agreement. (*Id.* ¶ 23.)

### 3. Four-Week VSP for Employees Scheduled to be Laid Off After the Effects Agreement

The employees that DHL placed on layoff status after the date of the Effects Agreement were eligible to receive four weeks of straight-time pay, as well as pension, health, and welfare, coverage if they voluntarily resigned their employment, gave up their contractual recall rights, and executed a general waiver and release. (*Id.* ¶ 24.) Those employees also had time to consider the release and seven days after execution to revoke it. (*Id.*)

## D. DHL Employees Voluntarily Separate and Sign Waiver and Release

A total of 506 employees resigned pursuant to the VSPs. (*Id.* ¶ 26.) Neither Local 705 nor any employee entering into a release filed a grievance under the CBA or the Effects Agreement with DHL or an unfair labor practice charge with the National Labor Relations Board alleging either that DHL bargained in bad faith with respect to any element of the Effects Agreement, that any release was invalid, or that Local 705 breached its duty of fair representation under the National Labor Relations Act in connection with the Effects Agreement, the VSPs, or any individual releases. (*Id.* ¶ 27.) Also, none of the employees who participated in one of the VSPs has sought to revoke their release or has tendered back the payment and benefits they received, offered to do so, or sought to rescind their resignation. (*Id.* ¶ 28.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a).[1]  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

In its motion for summary judgment, DHL argues that the EEOC is barred from seeking monetary relief on behalf of the Charging Parties who signed waiver and releases with DHL.  DHL further argues that the Plaintiff-Interveners who signed waiver and releases with DHL have also waived their employment discrimination claims against DHL.  The Court addresses each argument in turn.

I.  **EEOC's Claims Seeking Victim-Specific Monetary Relief**

In its summary judgment motion, DHL argues that the EEOC cannot pursue monetary

---

[1] Effective December 1, 2010, Federal Rule of Civil Procedure 56 was amended. Among other changes, the summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), and its wording was changed from "genuine issue" to "genuine dispute."  Nevertheless, according to the 2010 Advisory Committee Notes, "the standard for granting summary judgment remains unchanged."

8

relief on behalf of the Charging Parties – although the EEOC can pursue non-monetary relief. *See EEOC v. Waffle House, Inc.,* 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). In *Waffle House*, the Supreme Court held that an agreement between an employee and employer to arbitrate did not preclude the EEOC from seeking monetary relief on behalf of that employee. *See id.* at 296; *see also EEOC v. Sidley Austin LLP,* 437 F.3d 695, 696 (7th Cir. 2006). In *Sidley*, the Seventh Circuit explained the *Waffle House* holding: "The reason there was no bar was not that the arbitration clause was unenforceable but that the Commission was not bound by it because its enforcement authority is not derivative of the legal rights of individuals even when it is seeking to make them whole." *Id.* at 696. Therefore, the *Waffle House* decision, "show[s] that the agency's powers are independent of any resolution between employer and employee." *EEOC v. Watkins Motor Lines, Inc.,* 553 F.3d 593, 597 (7th Cir. 2009).

Nevertheless, the *Waffle House* Court also held that if an individual plaintiff "accepted a monetary settlement, any recovery by the EEOC would be limited accordingly." *Id.* at 296-97. In other words, it "goes without saying that the courts can and should preclude double recovery by an individual." *Id.* at 297 (quoting *General Tel. Co. of Nw. v. EEOC,* 446 U.S. 318, 333, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). To avoid any such double recovery, "courts have generally agreed that the correct approach is to apply a post-judgment offset of any monetary recoveries realized by a successful EEOC suit on behalf of the claimants by the amount of the settlement agreement to ensure that there is no double recovery." *See EEOC v. International Profit Assocs., Inc.,* No. 01 C 4427, 2008 WL 485130, at *2 (N.D. Ill. Feb. 22, 2008) (collecting cases); *EEOC v. Continental Airlines Inc.,* No. 04 C 3055, 2006 WL 3505485, at *2 (N.D. Ill. Dec. 4, 2006) (same). Put differently, because some of the remedies under Title VII are equitable, a district

9

court can adjust the relief – post-judgment – if double recovery is at issue. *See General Tele.*, 446 U.S. at 333; *see also EEOC v. Warshawsky & Co.,* No. 90 C 1352, 1993 WL 303097, at *17 (N.D. Ill. Apr. 15, 1993) ("EEOC actions [are] separate and apart from private actions brought against an employer" and in "the case of overlap of remedies, courts [] use equitable means to prevent double recoveries.").[2]

Relying on dicta from the *Sidley* decision, DHL maintains that the EEOC is completely barred from bringing claims on behalf of the Charging Parties due to the effects agreements and waiver and releases that provided these employees with either four or ten weeks of straight-time pay and benefits. More specifically, DHL relies on the following language:

> For all we know, some of the ex-partners may have received settlements from Sidley and others may have failed to mitigate their damages. Suppose all have received settlements that have *fully compensated* them for the alleged violations of the age discrimination law. Then the EEOC could obtain no monetary relief on their behalf. But this was not the basis for Sidley's motion for partial summary judgment.

*Id.* at 696 (emphasis added). The *Sidley* court's reasoning is based on the premise that if the settlements "fully compensated" the employees at issue, the EEOC could not obtain money damages on behalf of these employees. At this procedural posture, however, the Court cannot determine whether the Charging Parties have been fully compensated, namely, whether the relief obtained via their agreements with DHL is "fully equivalent to that obtainable under Title VII." *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 51 n.14, 94 S.Ct. 1011 (1974).

Moreover, the EEOC also maintains that it is not seeking back-pay damages in this

---

[2] Title I to the Civil Rights Act of 1991 added the non-equitable remedies of compensatory and punitive damages for Title VII cases for both private plaintiffs and the EEOC. *See EEOC v. Waffle House, Inc.,* 534 U.S. 279, 287, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002); 42 U.S.C. § 1981a.

10

matter as in *Sidley*, but only compensatory and punitive damages. To clarify, in *Sidley*, the EEOC brought a claim on behalf of the law firms' partners under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, seeking back-pay damages because the ADEA does not provide for punitive or compensatory damages. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 773 (7th Cir. 2002). Thus, nothing in the *Sidley* decision bars the EEOC from seeking compensatory or punitive damages on behalf of employees who signed a waiver or release agreement as DHL suggests. Accordingly, the Court denies DHL's motion for summary judgment as to the EEOC's claims brought on behalf of the Charging Parties.

## II. Intervening-Plaintiffs' Claim

Next, DHL contends that the Plaintiff-Interveners who signed releases have waived their employment discrimination claims against DHL. The DHL employees who accepted the DHL-Local 750 negotiated agreements signed the following General Waiver and Release:

> For and in consideration of the receipt of the Severance Payment and other benefits provided in the Effects Bargaining Agreement (which I acknowledge are payments and benefits beyond anything to which I am already or otherwise entitled), I hereby waive, release and discharge DHL Express (USA), Inc., its parent corporation, subsidiaries, related corporations and affiliates, their successors and assigns, and their shareholders, officers, directors, employees and agents (hereinafter together the "Company"), and the Teamsters Local Union No. 705, affiliated with the International Brotherhood of Teamsters (hereinafter the "Union") from any and all actions, causes of action, demands, claims or liabilities (whether known or unknown) arising out of my employment or the termination of my employment by the Company, including but not limited to any claims under any federal, state, or local law concerning employment rights or employment discrimination of any type, including the National Labor Relations Act, the Illinois Worker Adjustment and Retraining Notification Act, the Federal Worker Adjustment and Retraining Notification (WARN) Act, and laws involving claims of discrimination based on race, sex, religion, national origin, disability, veteran's status, union activity, marital status, retaliation, harassment or other protected categories, claims for breach of any implied or express employment contracts or covenants, claims for wrongful termination, public policy violations, defamation, emotional distress or other common law torts, or claims under any Collective

> Bargaining Agreement, Supplemental Agreement, Memorandum of Understanding (MOU), or any other agreement between the Company and the Union. I further understand that by accepting the Severance Payment, I am giving up my employment relationship with the Company, including any recall rights and seniority.... I further understand that nothing in this waiver and release generally prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, NLRB, or any other federal, state or local agency charged with the enforcement of any employment laws, although by signing this document I am waiving my right to individual relief based on claims asserted in such a charge or complaint. If any provision of this General Waiver and Release is deemed to be unenforceable or invalid, this shall not affect the validity and enforceability of the remainder of this General Waiver and Release.
>
> I acknowledge that I have been and am in this document advised in writing to consult an attorney before executing this General Release and that the foregoing shall operate as a general release and as a promise not to sue, and that I have read and understand this General Release. I acknowledge I have received seven (7) days to consider this General Release before signing it, and I understand that I have seven (7) days to revoke it after I sign it.

(R. 31-2, Effects Bargaining Agreement, App. A, General Waiver and Release.)

For the General Waiver and Release to be valid, the Court must determine whether the employee knowingly and voluntarily entered into the agreement. *See Baptist v. City of Kankakee,* 481 F.3d 485, 490 (7th Cir. 2007) (citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 51 n.15, 94 S.Ct. 1011 (1974)); *see also Howell v. Motorola, Inc.,* 633 F.3d 552, 559 (7th Cir. 2011). "When an employee challenges whether a settlement was knowing and voluntary, "'a court must examine the 'totality of the circumstances' surrounding [its] execution.'" *Baptist,* 481 F.3d at 490 (citation omitted). In examining the totality of the circumstances, the Court looks to a number of facts, including, but not limited to:

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with

an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Howell*, 633 F.3d at 559 (quoting *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.,* 65 F.3d 562, 571 (7th Cir. 1995)).

Here, the *Pierce* factors weigh heavily in favor of DHL's contention that its employees entered into the effects agreement, including the release and waiver, knowingly and voluntarily. Specifically, in November and December 2008, DHL and Local 750 negotiated the agreements making benefits available to the affected employees – benefits that the CBA did not otherwise provide. The release and waiver advised employees to consult an attorney before signing, as did Local 705's letter to workers who had already been laid off. The language of the effects agreement and General Waiver and Release is clear and unambiguous, as discussed in further detail below. Also, there is no evidence in the record that DHL engaged in any improper conduct to induce the employees to release their rights. Moreover, its is undisputed that the employees who DHL offered four-week severance had seven days after accepting the severance packages in which to reconsider and revoke their acceptance and the employees who DHL offered ten-week severance had approximately nine days to consider the severance package. (*See* Def.'s Stmt. Facts ¶¶ 19, 21.)[3] As the Seventh Circuit explained in a recent decision in which the exact agreements were at issue in the context of the Federal Worker Adjustment and Retraining Notification (WARN) Act claims, 29 U.S.C. § 2101(a):

---

[3] Plaintiff-Interveners' contention that some of the employees signed the waiver and release prior to the seven days from the effects agreement date does not necessarily refute the fact that employees had at least seven days to sign the waiver and release.

> That the workers had to decide whether to take the bird in the hand – the severance packages – or the bird in the bush – the right to retain their seniority rank, remain on the recall rolls for three years, and pursue claims against DHL – in a short period of time does not render their decisions involuntary. Nor does the fact that neither bird was particularly attractive.

*Ellis v. DHL Exp. Inc. (USA),* 632 F.3d 522, 2011 WL 67787, at *4 (7th Cir. Jan. 11, 2011).

Nonetheless, Plaintiff-Interveners Baily, Green-Riley, Jordan, McNeeley, Thompson, and Williams maintain that because they had pending EEOC charges at the time they signed the General Waiver and Release, they are not barred from bringing their race discrimination claims. The plain language of the General Waiver and Release, however, does not except pending EEOC charges as Plaintiff-Interveners contend. *See Pierce,* 65 F.3d at 571 (courts look to agreement's plain, unambiguous language); *see, e.g., Ellis v. DHL Exp. Inc. (USA),* 632 F.3d 522, 2011 WL 67787, at *4 (same). Instead, the General Waiver and Release states:

> This waiver and release shall not apply to: (1) any claim arising after the execution of the General Waiver and Release, including any future claims arising under COBRA or ERISA, (2) any unresolved grievance that I have pending at the time I sign this General Release, (3) claims which may be based on an alleged violation of the Effects Bargaining Agreement dated December 5, 2008, (4) claims arising under the Age Discrimination in Employment Act (ADEA), (5) any Workers' Compensation claim, or (6) any other claim which cannot be waived by law.

(R. 31-2, Effects Bargaining Agreement, App. A, General Waiver and Release.)

Plaintiff-Interveners also rely on the following language of the General Waiver and Release for the proposition that they may bring their individual Title VII claims:

> I further understand that nothing in this waiver and release generally prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, NLRB, or any other federal, state or local agency charged with the enforcement of any employment laws, although by signing this document I am waiving my right to individual relief based on claims asserted in such a charge or complaint.

(App. A, General Waiver and Release.) This plain, unambiguous language of the General Waiver and Release states that an employee waives his or her rights to individual relief under Title VII. Thus, although the EEOC's claims are allowed under the General Waiver and Release, as discussed above, the individual Plaintiff-Interveners' claims are not.[4] Plaintiff-Interveners, however, contend that the term "individual relief" is ambiguous because it could mean injunctive relief, declaratory relief, or money damages. In the context of the General Waiver and Release's language and controlling case law, "individual relief" is in the context of an employee's private cause of action and not an EEOC enforcement action. *See Waffle House*, 534 U.S. at 287-88; *see also Sidley*, 437 F.3d at 696 (EEOC's "enforcement authority is not derivative of the legal rights of individuals even when it is seeking to make them whole."). As such, Plaintiff-Interveners' argument that "individual relief" is ambiguous is without merit.

Next, Plaintiff-Interveners argue that DHL's additional, separate settlement agreement with former DHL employee, Aldrich McNeal, Jr., as it related to his EEOC charge against DHL, establishes that DHL should have paid consideration beyond the effects agreements in exchange for the release of EEOC claims and other potential discrimination claims. (*See* Def.'s Stmt. Facts ¶ 34.) Put differently, Plaintiff-Interveners contend that because DHL did not give them additional consideration like they did for McNeal, a jury question exists as to whether any consideration was given for the already filed EEOC charges. Plaintiff-Interveners' argument is premised on the fact that the consideration DHL paid them pursuant to the voluntary separation programs was insufficient to release their employment discrimination claims. It is undisputed,

---

[4] Because the EEOC was not a party to the General Waiver and Releases, it has not waived any victim-specific claims for individual relief.

however, that in exchange for the four or ten weeks of straight-time pay, as well as benefits, the employees received separate benefits they would not have otherwise been provided. (Def.'s Stmt. Facts ¶¶ 12, 13.) As such, the consideration for waiving their employment discrimination claim "exceeded the benefits to which the employee was already entitled by contract or law." *Pierce,* 65 F.3d at 571.

Plaintiff-Interveners also argue that they were not asked to ratify the effects agreement, yet they fail to develop this argument in any meaningful way and do not support this argument with controlling legal authority. *See United States v. Adams,* 625 F.3d 371, 378 (7th Cir. 2010) (failing to develop argument in meaningful way waives argument); *United States v. Elst,* 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."). Plaintiff-Interveners have therefore waived this argument.

Finally, Plaintiff-Interveners contend that it was not their belief that they were releasing their monetary claims for the pending or anticipated employment discrimination claims when they signed the General Waiver and Release. As the Seventh Circuit teaches, "we do not permit claims of subjective misunderstanding, standing alone, to defeat an otherwise valid release." *Pierce v. Atchison Topeka & Santa Fe Ry. Co.,* 110 F.3d 431, 442 (7th Cir. 1997). As discussed above, the *Pierce* totality of circumstances factors clearly establish that the Plaintiff-Interveners entered into the agreements knowingly and voluntarily, thus Plaintiff-Interveners' subjective belief, alone, does not change this analysis. *See id.* Accordingly, Plaintiff-Interveners have failed to establish a genuine dispute as to any material fact that they did not enter into General Release and Waivers knowingly and voluntarily. Therefore, DHL is entitled to judgment as a

matter of law as to the Plaintiff-Interveners who signed the General Waiver and Release related to their separate, individual discrimination claims.

On a final note, the Court reminds the parties that arguments made for the first time in reply briefs and arguments made in footnotes are waived. *See Dexia Credit Local v. Rogan,* 629 F.3d 612, 625 (7th Cir. 2010); *Long v. Teachers' Ret. Sys. of Ill.,* 585 F.3d 344, 349 (7th Cir. 2009).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part DHL's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(a).

**Date:** April 7, 2011

 ENTERED

 _____
 **AMY J. ST. EVE**
 **United States District Court Judge**