IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION,                   )
        Plaintiff,             )
                              )  No. 10 C 6139
    and                       )
                              )  Judge John Z. Lee
REGINALD BAILEY, et al.       )
        Intervening-Plaintiffs, )  Magistrate Judge
                              )  Arlander Keys
    V.                        )
                              )
DHL EXPRESS (USA), INC.,      )
        Defendant.            )

## MEMORANDUM OPINION AND ORDER

Currently before the Court is DHL Express' (USA), Inc. ("DHL" or "Defendant") Motion to Compel depositions. DHL argues that Plaintiff, EEOC and Plaintiff-Intervenors ("EEOC" or Plaintiff), refuse to make claimants available for deposition. For the reasons set forth below, DHL's Motion is granted.

## Background Facts

DHL is an international shipping company. During the time period at issue, 2005 to the present, all of DHL's Chicago area driver/dockworkers, including all 94 of the claimants[1], have been represented by Teamsters Local Union No. 705. On September 24, 2010, the EEOC filed the case at bar on behalf of 94 claimants, alleging that DHL discriminated against its African-American

---

[1]The Parties represented by the EEOC and Plaintiff-Intervenors include 13 Plaintiff-Intervenors, 10 non-intervenor Charging Parties and 71 additional claimants. The Court refers to all of these parties collectively as "claimants."

driver/dockworkers based on their race by giving them less desirable, more difficult, and more dangerous route and dock assignments than their Caucasian counterparts and by assigning African-American drivers to routes in predominately African-American areas.  However, the EEOC has not alleged nor identified what it is that constitutes a "less desirable," "more difficult," or a "more dangerous assignment."  Instead, the EEOC provided interrogatory responses, including a vignette for each claimant (who is not a Plaintiff-Intervenor or Charging Party), with the claimants' general allegations of discrimination.  These vignettes are not sworn, verified, nor made under oath.

   DHL requests that the Court order the EEOC to produce all of the claimants to be deposed, arguing that the vignettes provided by Plaintiff are vague, filled with generalities, and in several instances inaccurate.  Moreover, DHL argues that, because there is no standard as to what a "more dangerous assignment" is, what defines a "Black area," and no objective criteria for what constitutes "less desirable," each claimant's individual testimony is pivotal to establishing the facts necessary for DHL to defend itself against the allegations EEOC has put forward.  Alternatively, the EEOC characterizes the instant case as one involving only the distribution of work assignments, downplaying the personal opinions of the claimants' assignments along with the need for any further depositions, and opining that the route

assignment claims can be proven through its expert's analysis.

To date, DHL has deposed 34 of the 94 claimants, including 11 of the 13 Plaintiff-Intervenors. Thus far, the testimony has varied widely amongst each claimant regarding different subjective standards for what constitutes a predominantly African-American area, inconsistent definitions of what makes an area or route unsafe, and different standards as to what makes a route or dock assignment desirable.

## **DISCUSSION**

The EEOC's complaint alleges both discrimination and segregation in route and dock assignments. Under either theory, the EEOC must prove not only the allegation, but also the result and effect of the alleged segregation and discrimination on each claimant. Moreover, because this is not a Rule 23 class action, each claimant must prove liability and damages, the parties cannot rely on testimony or the experience of someone else. Conversely, DHL must be able to assess claimants' allegations in order to defend against them. The Court finds the sworn depositions of the individual claimants necessary, as the EEOC's claims are based on allegedly adverse actions that are subjective in nature and an analysis of each individual claimant's testimony is of necessity. Thus, for the reasons explained further below, the Court grants Defendant's Motion to Compel.

**I. Necessity for Each Claimants' Individual Experience**

The EEOC has brought this lawsuit under §706(f)(1) and §706(f)(3) of title VII, as amended, 42 U.S.C. §2000e-5(f)(1) and §20000e-5(f)(3), and §102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a. (Dkt. #26 at par.2.) The claimants are not non-party witnesses, they are persons on whose behalf the EEOC is seeking relief for compensatory and punitive damages in their individual capacity.

**A. Not Unduly Expensive**

The EEOC first asserts that, in most cases, there are more people with knowledge regarding the claims at issue than are necessarily deposed (Pl.'s Resp. p.3.), and that deposing each claimant is unduly expensive. Plaintiff relies on *EEOC v. YRC, Inc.*, Case No. 09 cv 7693 (N.D. Ill.), suggesting that the facts of that case are similar to those herein, and that there the parties agreed to a lower percentage of claimant depositions compared to the actual size of the case.

Plaintiff's reliance upon *YRC* is as unavailing as is its argument of expense. The EEOC's assertion that an agreement in *YRC* between the *parties* to limit the number of depositions per side somehow dictates that DHL is not entitled to take all of the claimant depositions is misplaced. The agreement in *YRC* only demonstrates what the parties there were able to agree to, not what the Court decided as it relates to the allowed number of

4

depositions. Here, the EEOC acknowledges that DHL has also made some cooperative agreements, including splitting the cost of a joint database of staffing information, as well as limiting the time of the fact depositions. DHL is not seeking to depose everyone with knowledge in this case, but only the individual claimants on whose behalf the EEOC is seeking individual damages.

The EEOC claims that deposing each claimant is unduly expensive, nonetheless. While the Court appreciates the expense that a case of this sort can generate, this situation is not unique. In another EEOC action under Section 706, the federal district Court ordered the EEOC to make over twice as many claimants available for deposition. *EEOC v. CRST Van. Expedited, Inc*., 679 F.3d 657, 670 (8th Cir. May 8, 2012)(EEOC ordered to make all 270 of its identified claimants available for deposition.) Moreover, expenses are being incurred based on how the EEOC has decided to prosecute this case overall, including hiring an expert to analyze route assignments. The Court will not jeopardize DHL's opportunity to defend itself in order to accommodate the expense of Plaintiff's litigation strategy.

**B. Proof of Adverse Employment Action**

Under either a discrimination or segregation theory, the EEOC must prove that each claimant was subjected to an adverse employment action, which had an effect on the claimant. *See Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d

772, 779 (7th Cir. 2007.) The EEOC attempts to distinguish *EEOC v. CRST Van. Expedited, Inc*., by asserting that there the EEOC alleged sexual harassment, and that in order to prove sexual harassment under Title VII, the plaintiff had to establish that the victims were subjectively offended by the conduct. Here, the EEOC argues that there is no such requirement in a segregation case, therefore, depositions are unnecessary. While the Court agrees that the instant case does not specifically require a showing that the victim was subjectively offended to prove liability, the instant case does however require more than simply showing that the segregation occurred- there has to be an effect on the claimant. Regardless of the possibility that the EEOC's anticipated expert analysis can address this issue or not, the testimony about the individual claimants' experiences and their choices are relevant to the adverse action analysis necessary for DHL to defend against the claims. Moreover, DHL should be able to probe and cross-examine the claimants on their claims, which a deposition affords them the leeway to do.

**C. Proof of Liability and Damages**

In order to seek damages for the individual claimants, the EEOC must prove that each individual claimant was subject to the discriminatory policy. *EEOC v. RJB Properties, Inc.,* 857 F.Supp.2d 727, 741 at n.4 (N.D. Ill. April 23, 2012); *E.E.O.C. v. International Profit Associates, Inc.*, No. 01 C 4427, 2007 WL

6

3120069, at *2 (N.D.Ill. Oct. 23, 2007.) In the instant case, that means proving each claimant suffered a materially adverse employment action and their "garden variety" emotional distress damages. Furthermore, the materially adverse action analysis must include whether the claimant felt the particular route assignment was discriminatory. However, some of the claimants have testified that they were happy with a route in an area they characterized as predominantly African-American, unsafe or more difficult. (Ex. 4, Jordan Dep. 77:11-83:23 (testifying that he liked driving a route in an area he characterized as predominantly African-American and unsafe); Ex. 26, Hopkins Dep. 51:13-52:7, 95:13-23 (testifying that he liked a route he characterized as "one of the heaviest routes").) Another testified that the route he would have preferred was also in a predominantly African-American and unsafe area (Ex. 5, Bailey Dep. 52:14-53:16.)

The EEOC's vignettes do not consistently include any analysis of the claimants' preferred routes and whether they could be considered "less desirable" "more difficult" or "more dangerous". The Collective Bargaining Agreement determined all of the drivers' salary and benefits, as well as their position in bidding for stations and time slots. Thus, each claimant had a role in choosing the assignment he or she received, including what station and time slot he or she bid into, whether he or she

7

asked for a specific route or asked to be taken off of a specific route, and whether the claimant had knowledge of the area covered by particular routes.  The EEOC's vignettes do not make clear the information necessary to understand each claimant's preferences and the role those preferences played in the assignments he or she was given.

The Court finds the individual claimant testimony also necessary to address damages.  The EEOC is seeking individual monetary damages for each claimant.  In order to adequately address those damages, DHL must be allowed to probe the individual's claim.  In most of the EEOC's vignettes, damages are addressed in a vague sentence, stating that the claimant was angered or upset or frustrated by the alleged discrimination. (*See, e.g.*, Ex. 6 at 12, Buffkin Interrogatory Response ("He felt very angry by the perceived discriminatory treatment of African American employees.") The EEOC claims that damages testimony is unnecessary because it is only pursuing garden variety damages for each claimant.  The Court, however, finds that those are still individual damages claims that the EEOC must prove, and DHL is entitled to probe for a more specific understanding.  Such vague representations do not allow DHL to adequately assess each claimants' damages.

**D. Individual Depositions Necessary to Establish Work Assignments**

The EEOC opines that additional depositions are duplicative

8

as DHL has, or should have, employment records detailing where and when all the claimants worked at DHL. Plaintiff suggests that "DHL has spent and [sic] inordinate amount of time asking the drivers what routes they drove and if those routes are in dangerous or predominately African American Neighborhoods. Such information is maintained by DHL, and that documentation is far more reliable then [sic] a driver's distant memory of each route that she/he completed since 2005." (Pl.'s Resp. p.5.) However, Defendant asserts that, prior to 2009, DHL did not regularly record what dock assignments employees did each day. (Def.'s Reply p.8.) Plaintiff contests that fact by explaining that, because testimony has been consistent that African-American employees were assigned the more dangerous routes and the heavier task of sorting boxes, while the white employees sorted letters in more desirable areas, further depositions are still redundant. The Court finds the testimony inconsistent, as while some aligns with Plaintiff's assertion, other testimony does not.

Several claimants provided testimony that they did not believe the dock assignments they received at some stations were discriminatory. (Ex. 2, Singleton Dep. 80:10-21; Ex. 8, Gilbert Dep. 47:2-6.) Contrary to the EEOC's assertion that the claimant testimony regarding letter and freight sorting has been consistent, some claimants testified that they sorted letters often, or were assigned to other stations. (Ex. 9, McNeely Dep.

9

92:4-9 (testifying that she sorted letters approximately four times a week, consistently during the relevant time period); Ex. 10, Perry Dep. 108:20-109:16 (testifying that she sorted letters while working at the Alsip station and that most of the other employees sorting letters were also African-American); Ex. 11, Studstill Dep. 147:10-148:9 (testifying that he requested to work in the "pit" less and subsequently was able to work the international station). Claimants have additionally testified that there were white employees who sorted freight, as well. (Ex. 13, Martin Dep. 90:21-23; Ex. 15, Lyons Dep.99:12-101:4; Ex. 16, Hayes Dep. 69:1-70:17.)

The Court finds it necessary to determine each claimant's dock/route and task assignment via deposition, in an effort to determine if the employee deemed it a discriminatory position or not.

**E. Distinctions Between Individual Testimony and Vignettes**

Finally, although the EEOC acknowledges that its over 120 pages of interrogatory answers "are not perfect", Plaintiff maintains that the inaccuracies are minor and further depositions are still unnecessary -even if for clarification purposes. The Court disagrees. Evidence of several important distinctions and insufficiencies that affect the relevance and weight of the claims are apparent when contrasting some of the interrogatory answer vignettes to the deposition testimony.

For example, the EEOC claims that Felicia Hill's deposition testimony that she was called a "black bitch" by a co-worker, rather than a supervisor, as alleged in her vignette is "a minor correction" and that because the EEOC is not alleging a hostile work environment, it is "a collateral matter." To the contrary, the EEOC is alleging that DHL's managers intentionally discriminated against African-American employees. Whether it was a manager or a coworker that called Ms. Hill a "black bitch" makes a difference – it proves that the comment is not direct evidence of intentional discrimination by her managers.

Additionally, while DHL argues that events prior to 2005 are irrelevant, the EEOC claims that events described in its vignettes that took place prior to 2005 are relevant as background evidence. (Pl.'s Resp. p.12.) Whether the claims are irrelevant or only relevant as background evidence, DHL must be allowed to understand which claims directly relate to the case and which are merely background. Because the EEOC vignettes generally do not make a distinction between claims that occurred before the relevant time frame or at relevant stations, DHL must be allowed to depose the claimants in order to properly understand the scope of their claims.

The EEOC offered to provide verification of its interrogatory responses in lieu of deposing every claimant. (Pl.'s Resp. p.3 n.2.) However, a verification from

the EEOC would not require each claimant to attest to his or her vignette and would not allow DHL to cross examine the claimant on his or her claims. Even if the vignettes were completely accurate, the Court still supports the deposing of the rest of the claimants, as the Court finds the deposition of each claimant necessary for a thorough exploration of the allegations at hand.

**II. Extension of Fact Discovery**

Lastly, Plaintiff opines that DHL delayed in filing the instant motion and is concerned about its ability to schedule all of the claimant depositions prior to the current discovery cut-off date of December 1, 2012. DHL approximates being able to conduct all of the claimant depositions within a one-month time frame. In view of the upcoming holiday season, the Court hereby extends the fact discovery deadline to February 1, 2013.

## CONCLUSION

For the reasons explained above, Defendant's Motion to Compel [108] is GRANTED, and the fact discovery cut-off date is extended to February 1, 2013.

DATED: October 31, 2012        E N T E R E D:

_____
Arlander Keys
United States Magistrate Judge