IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| | ) | Case No. 10 C 06139 |
| Plaintiff, | ) ) | |
| and | ) ) | |
| | ) | Judge John Z. Lee |
| REGINALD BAILEY, et al., | ) ) | |
| Intervening-Plaintiffs, | ) ) | |
| v. | ) ) | |
| DHL EXPRESS (USA), INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DHL'S MOTION TO STRIKE THE
NEW EXPERT REPORT OF DR. THOMAS DIPRETE**

Camille A. Olson
Richard B. Lapp
David Ross
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
(312) 460-5000
(312) 460-7000 (fax)

On May 1, 2017 -- well after the close of expert discovery and in response to DHL's motion for summary judgment -- the EEOC's expert Dr. Thomas A. DiPrete submitted a declaration ("Declaration") that presents completely new analyses and new calculations used to support completely new opinions not offered in DiPrete's initial report.[1] Whether viewed as an entirely new report, or a supplement to his original report, the Declaration is untimely and should be stricken.

In his original report, DiPrete opines that Black drivers were, on average, more likely to be assigned areas with *relatively* more--even if only by the slimmest of margins -- Black residents, poor residents, and incidents of property and/or violent crime than White Drivers. DiPrete and the EEOC have conceded that DiPrete's original report made no analysis of individual drivers' route assignments (claimant or non-claimant), and that his original report contained no quantitative benchmark or threshold above which a particular assignment was unsafe or undesirable.

Now, for the first time in his Declaration and in response to DHL's summary judgment arguments, DiPrete has calculated and opined on a threshold for what constitutes a "high crime" area, and he has conducted completely new analyses of individual claimant route assignments on a stop-by-stop basis. The Declaration is based on new calculations made with a new computer code, espousing new and unsupported benchmarks, and is based on new claimant-by-claimant and stop-by-stop analyses, which he previously eschewed. None of these new analyses, calculations, opinions or conclusions were contained in DiPrete's original report.

DiPrete's Declaration is plainly untimely, and should be stricken pursuant to Federal Rule of Civil Procedure 37. Rule 37(c)(1) provides that expert testimony may not be used if the

---

[1] Declaration of Dr. Thomas DiPrete dated April 27, 2017, attached hereto as Exhibit A.

expert's report was not disclosed to the other side within the relevant deadlines unless the party's failure "was substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1). Here, there is no justification for the EEOC's late submission of the new analyses, conclusions and opinions contained in DiPrete's Declaration, nor has the EEOC attempted to provide one. Far from being "harmless," this strategic litigation tactic substantially prejudices DHL, who is unable to adequately analyze the new opinions, cross examine DiPrete on the contents of the Declaration, or prepare expert rebuttal testimony in the middle of summary judgment briefing. The Federal Rules and this Court's scheduling order do not allow expert testimony to be a moving target, but that is precisely what the EEOC is attempting to do here. For these reasons, Defendants move to strike the Declaration as untimely and to exclude the conclusions and opinions expressed therein.

## BACKGROUND

On May 6, 2015, the Court set the expert discovery schedule and ordered all affirmative expert reports to be submitted by June 22, 2015, and ordered any rebuttal reports be submitted by August 20, 2015. (ECF No. 205.) The Court's scheduling order did not permit the EEOC to reply to DHL's rebuttal expert, nor did the EEOC request an opportunity to reply to DHL's rebuttal expert. (*Id.*; *see also* ECF No. 191 (Joint Agreed Discovery Plan).) All expert depositions were completed by October 7, 2015.

### A.   DiPrete's Original Report

The EEOC submitted DiPrete's expert report on June 19, 2015. In his report, DiPrete used a standard regression analysis to investigate the extent to which certain neighborhood characteristics of driver routes are associated, *on average,* with the race of the driver.[2] But, by

---

[2] Deposition Transcript of Dr. Thomas DiPrete dated August 11, 2015 ("DiPrete Tr.") at 108-09, attached hereto as Exhibit B.

2

DiPrete's own admission, his report made no analysis or conclusions regarding whether any *individual* driver (claimant or non-claimant) was disadvantaged in their particular route assignments as compared to White drivers.[3] As DiPrete explained during his deposition:

> Q. Your regression analysis enables you to draw a generalization about what is or is not the case with respect to route assignments for African Americans and whites on average: isn't that true?
>
> A. Yes.
>
> Q. It doesn't allow you to make statements about what is the case for specific claimants or observations?
>
> A. That's correct.[4]

Further, in an effort to "determine whether black DHL drivers were more likely than white drivers to drive routes in predominantly black neighborhoods and to drive routes that were, as alleged in the complaint, 'less desirable, more difficult, and/or more dangerous,'"[5] DiPrete ranked driver routes according to relative black density, poverty and crime rates in the "neighborhoods" adjacent to the routes.[6] Importantly, DiPrete admitted during his deposition that he had no standard to identify what racial or socioeconomic composition should mark a route as "undesirable," or what rate of crime should mark a route as "unsafe":

> Q: … Just because one neighborhood might have a somewhat greater density of African Americans than another doesn't make that neighborhood undesirable in and of itself. You would agree?
>
> A. I thinks that's correct.
>
> Q. And I guess you would say the same thing about poverty rates. Just because one neighborhood has a greater poverty rate than another

---

[3] *Id*.
[4] *Id.*
[5] Report of Dr. Thomas DiPrete dated June 19, 2015 ("DiPrete Report") at ¶ 1, attached hereto as Exhibit C.
[6] *Id.* at ¶ 2.

> doesn't make that neighborhood per se undesirable compared to the other? [objection]
>
> A. Well, I mean I think it doesn't make it per se undesirable…
>
> Q. So you have no absolute standard by which you say if we get to this poverty level, then those routes are undesirable for DHL drivers.
>
> A. That's correct. I don't have an absolute standard.[7]

Similarly, with regard to whether a neighborhood is "dangerous," DiPrete admitted that he applied a relative standard, and not an absolute one. He explained that: "I don't have an absolute standard threshold by which I would say that above that threshold the neighborhood is dangerous and below that threshold it is not."[8]

### B. *Daubert* Briefing

DHL moved to exclude DiPrete's report because his analyses are not relevant, reliable or probative. (ECF Nos. 229 & 230.) In response to DHL's motion to exclude DiPrete, the EEOC admitted that DiPrete's report is insufficient to meet its burden of establishing intentional discrimination as to each claimant, and argued that DiPrete's report is only a "first step" in their proof, conceding that "[r]ace *or a factor correlated with race may have caused the patterns.*" (ECF No. 233 at 3 (emphasis added).)[9] The EEOC further acknowledged that at trial it must "offer additional evidence that individual claimants were affected by the discriminatory pattern." (*Id.*)

---

[7] DiPrete Tr. at 91-92.
[8] *Id.* at 93.
[9] The EEOC also submitted an untimely DiPrete declaration in reply to the criticisms made by DHL's rebuttal expert regarding the reliability of DiPrete's report. (ECF No. 233-1, Ex. A.) Although DHL argued the declaration was an untimely expert reply report, DHL did not move to strike the declaration (ECF No. 239 at 8-9). The Court made no mention of DiPrete's untimely reply declaration in its opinion and order allowing DiPrete's testimony. (ECF No. 254 at 6-9.)

4

On September 30, 2016, the Court allowed DiPrete's report into evidence, noting that "[t]he EEOC concedes that additional evidence beyond DiPrete's expert report will be necessary to prove that the assignment of drivers to these neighborhoods constituted materially adverse employment actions." (ECF No. 254 at 4.)

### C. Summary Judgment Briefing and DiPrete's Declaration

DHL moved for summary judgment on January 13, 2017, arguing in part that the EEOC lacked the additional evidence beyond DiPrete's expert report necessary to prove that individual claimants suffered a materially adverse employment action in their route assignments. (ECF No. 271 at 5-6, 8-10.) Now, almost two years after affirmative expert reports were due under the Scheduling Order, the EEOC attempts to belatedly shore-up DiPrete's original report with the new Declaration in an effort to provide that necessary "additional evidence."

According to the new Declaration, DiPrete conducted new analyses of race and crime data on a claimant-by-claimant and delivery stop-by-stop basis (Declaration ¶¶ 3-4(stating that DiPrete calculated the black density and crime rates for each package pickup and delivery location serviced by a Black driver, and that he identified each claimant who made at least one stop at a location that was 50% Black, 70% Black, or that had a property and/or violent crime rate more than two standard deviations above the mean)). He purports to have made completely new calculations to determine whether property and violent crime rates for each delivery stop observation are two or more standard deviations above the mean based on the 2010 Census Tract Stop-Level data. (Declaration ¶ 3.) Also, for the first time in his new Declaration, DiPrete sets a threshold for violent and property crime at "more than two standard deviations above the mean" without calculating or opining on whether or not this threshold is statistically significant. (*Id.*)

5

On May 15 and June 8, 2017, at the request of DHL's counsel, DiPrete produced work papers documenting the new calculations and analyses he performed to reach his recent conclusions and opinions contained in the new Declaration. (Hartman Decl. ¶¶ 2-4.)[10] DiPrete's work papers included a new computer program underlying his new calculations and analyses. (Hartman Decl. ¶ 3. ) His work papers also show that the number of delivery observations that DiPrete used in his new analyses is vastly greater than the number of observations on which he performed his original regression analyses. In his prior analyses, DiPrete filtered out pickup and delivery observations where the location address could not be matched with the GIS geocoding data DiPrete used to place the location in a census block group and census tract; *i.e.*, he could not be certain in which neighborhood the pickup or delivery was made for purposes of calculating the associated race, poverty and crime statistics. (*See* DiPrete Rep. ¶ 20.) Similarly, in his prior report, DiPrete also filtered out observations that did not match pickup and delivery data contained in the staffing data; *i.e.*, he could not be certain which driver (Black or White) made the pickup or delivery. (*Id.* at ¶ 35.) As a result, the regressions in DiPrete's original analyses included less than 5 million observations(*Id.* at Tables 5-8.). In staggering contrast, the analyses used to support his new Declaration use over 10 million pick-up and delivery observations, over double the number of observations. The new Declaration does not disclose or explain this difference, but one thing is undeniably clear: the new Declaration is based on different data that drastically increases the number of pick-up and delivery observations analyzed--including a significant portion of which DiPrete previously deemed too low quality to use. In effect, he gives himself many more chances to find what he is looking for in a claimant-by-claimant and delivery stop-by-stop analysis. The untimely submission of his Declaration deprives Defendant

---

[10] Declaration of Kyle R. Hartman, counsel of record, attached hereto as Exhibit D.

6

of any opportunity to investigate and expose the fallacies in the spurious analysis based on his inflated data.

## ARGUMENT

### DIPRETE'S NEW DECLARATION IS AN UNTIMELY EXPERT REPORT THAT IS NEITHER JUSTIFIED NOR HARMLESS AND IT SUBSTANTIALLY PREJUDICES DHL; THEREFORE IT MUST BE EXCLUDED

It is a fundamental principle of litigation that litigants are expected to comply with the Court-entered scheduling order. Specifically, Federal Rule of Civil Procedure 26(a)(2)(D) requires the parties to make expert disclosures "at the times and in the sequence that the court orders." Were the rule otherwise, parties would have no incentive to meet deadlines and deadlines would not be met." *Bull v. Board of Trustees of Ball State University,* No. 1:10-cv-00878-JMS-TAB (S.D. Ind. Jan. 10, 2012) (citing *Spears v. City of Indianapolis*, 74 F.3d 157 (7th Cir. 1996)).

When a party fails to timely provide information as required by Rule 26(a) or (e), that new information is excluded "unless the failure was substantially justified or is harmless." Fed.R.Civ.P.37(c)(1). In fact, the exclusion is "automatic and mandatory" unless the EEOC can establish that its late disclosure of DiPrete's new Declaration was substantially justified or is harmless. *Mid–Am. Tablewares, Inc. v. Mogi Trading Co. Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996). The EEOC cannot meet its burden, and the new Declaration should be excluded.

### A. DiPrete's New Declaration Is An Untimely New Expert Report

DiPrete's new Declaration should be stricken because it plainly offers new conclusions and opinions based on analyses and calculations, all which were required to be disclosed *two years* ago, well before DHL's rebuttal expert prepared his report and well before DHL filed its comprehensive motion for summary judgment (ECF No. 205 (expert reports due not later than

7

June 22, 2015)). *See Stuhlmacher v. Home Depot U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 164722, at *7 (N.D. Ind. Nov. 19, 2012) *rev'd on other grounds*, 774 F.3d 405 (7th Cir. 2014) (striking plaintiff's expert "supplemental" report produced after the defense expert's disclosure and deposition because "[t]his tactic undermines the court's authority to set forth the deadlines and order of production.").

DiPrete conceded that in his initial report he made no analyses of any race, crime or poverty characteristics of routes assigned to any individual drivers; and his initial report certainly did not contain any analysis or conclusions about the routes assigned to particular claimants. (DiPrete Tr. 108-109.) In his new Declaration, however, supported by new calculations and analyses, DiPrete opines and concludes for the first time that 54 individual claimants, on at least one occasion, picked-up or delivered a package at a specific location where property and violent crime were at least two standard deviations above the mean,[11] and where Black population density greater than 70%. (Declaration ¶¶ 3-4.) In its summary judgment motion, DHL has argued that the EEOC lacked the additional evidence beyond DiPrete's expert report necessary to prove that individual claimants suffered a materially adverse employment action in their route assignments. (ECF No. 271 at 5-6, 8-10.) Now, in opposition to DHL's motion for summary judgment, the EEOC relies DiPrete's new Declaration in an effort to establish that 57 out of 83 claimants "in fact drove routes in areas of high relative crime." (ECF No. 287 at 7.)

Likewise, DiPrete's initial report gave no opinion or conclusion regarding a threshold or benchmark to determine what amount of property or violent crime made a route or location "dangerous." In fact, DiPrete's initial report applied a relative standard. As DiPrete explained, he had "no absolute standard threshold by which I would say that above that threshold the

---

[11] Left unanswered in DiPrete's new declaration is just how he calculated a mean crime rate, *i.e.*, based on neighborhood, census tract, one or all of DHL's stations, or citywide.

neighborhood is dangerous and below that threshold it is not." (DiPrete Tr. at 93.) Now, in support of his new Declaration, DiPrete has purportedly analyzed crime data for each pickup and delivery location and tacitly concludes without explanation that picking up or delivering a package at a particular location where property and/or violent crime occurrences are "two standard deviations above the mean" is a threshold or benchmark for "dangerous." (DiPrete Decl. ¶¶ 3-7.)

The analyses, conclusions and opinions contained in DiPrete's new Declaration are clearly new. The Declaration is based on new calculations made with a new computer code, espouses new and unsupported benchmarks, and is based on new claimant-by-claimant and stop-by-stop analyses. The new analyses and conclusions were disclosed nearly two years too late and the untimely Declaration should be stricken.

### B. There Is No Justification The Late Disclosure Of DiPrete's New Analyses

DiPrete's new Declaration is based entirely on data that was produced some five years ago. (Hartman Decl. ¶ 5.) All of the new calculations and analyses DiPrete performed to support the new opinions and conclusions in the new Declaration could have been, but were not included in his original report. *See Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 935–36 (N.D. Ill. 2008) (striking new expert opinions contained in an affidavit submitted after expert discovery and in opposition to a motion for summary judgment) (*quoting Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F.Supp.2d 797, 807 (N.D.Ill. 2005) ("[i]f the late-filed opinions are new, they must be stricken"). *See also Baker v. Indian Prairie Community Unit, School Dist. 204,* No. 96-3927, 1999 WL 988799, *2 (N.D.Ill. Oct. 27, 1999) (striking reports containing "new conclusions which d[id] not merely correct or complete prior opinions"). There are no new facts or data that could possibly justify the disclosure of DiPrete's new analyses and Declaration so many years after the data was produced and expert discovery concluded.

9

### C. The Late Disclosure Is Not Harmless; It Is Highly Prejudicial to DHL

DHL is plainly prejudiced by the untimely submission of this new expert opinion. Expert reports were due nearly two years ago, and expert discovery closed and *Daubert* motions where briefed more than a year ago. Now, we are at in the last stage of summary judgment briefing, which begin more than six months ago, and DHL has no opportunity to analyze and respond to the new expert opinions, no opportunity to depose the EEOC's expert on his new opinions in order to prepare for cross examination, and no opportunity to rebut the new expert opinions. The parties and the Court have expended significant resources over the course of several years, adhering to the Court's scheduling orders. That there is no trial date does not make this late disclosure harmless. *Hard Surface Sols., Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010) ("Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen or to extend discovery. If that were the determining factor, no court could preclude expert or other testimony that was unseasonably disclosed contrary to the discovery deadline dates set by the Court.")

Moreover, the new expert opinions are clearly made in response to DHL's summary judgment argument that the EEOC lacks sufficient evidence to prove that individual claimants suffered a materially adverse employment action in their route assignments. The EEOC conceded, and the Court affirmed, that DiPrete's original report was insufficient to establish that any individual claimant suffered a materially adverse employment action in their route assignment. (ECF No. 254 at 4.) Summary judgment is in effect a "paper trial," and not a time to sandbag the opposing party and court with new evidence and expert analysis. *See, e.g., Green v. Norwest Mortg., Inc.,* No. 88 C 934, 1989 WL 15979, at *1 (N.D. Ill. Feb. 17, 1989) ("the role of a summary judgment motion as the equivalent of a paper trial—the presentation of the

10

evidence that the trier of fact would have if a trial were necessary . . . Instead this Court has been proffered snippets of evidence—and in successive stages…") The new Declaration is nothing more than an impermissible attempt to fill an evidentiary gap in the EEOC's case with new and untimely expert analyses and opinion. *See Lexington Ins. Co. v. Horace Mann Ins. Co.*, No. 11 C 2352, 2015 WL 5174159, at *6 (N.D. Ill. Aug. 27, 2015) (granting motion to strike 'supplemental' report not based on any new information and submitted after discovery deadline, noting that the rules do not allow parties to endless buttress its case or modify expert opinions previously given because it would circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines.)

The new analyses, conclusions and opinions contained in DiPrete's new Declaration are nearly two years too late, a tactic that if permitted shields DiPrete and deprives DHL the opportunity for cross examination or testing of his Diprete's new opinions, or from any inquiry into why he felt the need to conduct these new analyses and calculations in the first instance. The Declaration's late disclosure is not harmless; it would be fundamentally unfair and prejudicial to DHL to admit DiPrete's new expert analyses and report at this late stage of the litigation.

## CONCLUSION

The new DiPrete Declaration is not lengthy, but it is undeniably the result of new analyses and calculations made more than two years too late. For all of the reasons this Court should grant DHL's motion to strike DiPrete's Declaration.

11

**DATED: June 15, 2017**                      Respectfully submitted,
                                                                   DHL EXPRESS (USA), INC.

                                                                   By: *s/ Kyle R. Hartman*
                                                                   One of Its Attorneys

Camille A. Olson
Richard B. Lapp
David Ross
Seyfarth Shaw LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
(312) 460-5000
(312) 460-7000 (fax)

## **CERTIFICATE OF SERVICE**

I certify that on this date I caused a copy of the foregoing **DHL'S MEMORANDUM IN SUPPORT OF DHL'S MOTION TO STRIKE THE NEW EXPERT REPORT OF DR. THOMAS DIPRETE** to be served upon the following counsel of record by the Court's Electronic Filing System, which would then electronically notify the following CM/ECF participants on this case:

Laurie Elkin
Brad Fiorito
Equal Employment Opportunity Commission
500 West Madison Street, Room 2000
Chicago, IL 60661

Lee D Winston
Winston Cooks, LLC
2 North 20th Street
Suite 1330
Birmingham, AL 35205
(205) 502-0940

Leonard C. Goodman
Melissa Ann Matuzak
Len Goodman Law Office LLC
53 W. Jackson Blvd.
Suite 1650
Chicago, IL 60604
lcgoodman@rcn.com
melissamatuzak@gmail.com

Dated: June 15, 2017

-               *s/Kyle R. Hartman*