# EXHIBIT B

```
 1

 2   IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
 3   EASTERN DIVISION
     ---------------------------------------X
 4
     EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
 5
              Plaintiff,
 6
              and                Case No. 10-6139
 7
     ANTHONY JORDAN, et al.,
 8
              Intervening-Plaintiffs,
 9
              v.
10
     DHL EXPRESS (USA), INC.,
11
              Defendant.
12
     ---------------------------------------X
13

14

15

16         VIDEOTAPED DEPOSITION OF

17            DR. THOMAS DiPRETE

18            New York, New York

19         Tuesday, August 11, 2015

20

21

22

23

24   Reported by:
     JOAN WARNOCK
25   JOB NO. 149357
```



```
 1                       T. DiPrete
 2    might find desirable or undesirable.
 3           Q.   They might, but as you --
 4           A.   On the issue of the racial density
 5    of the routes, it's my understanding that the
 6    EEOC made a specific allegation about the
 7    assignment of black drivers to routes that
 8    were more black.  I'm not characterizing
 9    those as desirable or undesirable.  I'm
10    addressing a question that the EEOC felt was
11    important for the case.  And it's my
12    understanding that the results are probative.
13           Q.   Okay.  Well, it helps me understand
14    your report.  Just because one neighborhood
15    might have a somewhat greater density of
16    African Americans than another doesn't make
17    that neighborhood undesirable in and of
18    itself.  You would agree?
19           A.   I think that's correct.
20           Q.   And I guess you would say the same
21    thing about poverty rates.  Just because one
22    neighborhood has a greater poverty rate than
23    another doesn't make that neighborhood per se
24    undesirable compared to the other?
25                MR. WINSTON:  Object to the form.
```



```
 1                    T. DiPrete
 2        A.   Well, I mean I think it doesn't
 3   make it per se undesirable.  On the other
 4   hand, I don't have too much doubt that if I
 5   took a sample of people in Chicago and
 6   compared rich and poor neighborhoods and
 7   asked which are more desirable, I can predict
 8   the answers.
 9        Q.   We're not talking about which are
10   desirable to live in.  You already told us,
11   did you not, that you can't get into
12   Mr. Smith's head?
13        A.   That's correct.
14        Q.   Okay.  So you have no absolute
15   standard by which you say if we get to this
16   poverty level, then those routes are
17   undesirable for DHL drivers?
18        A.   That's correct.  I don't have an
19   absolute standard.
20        Q.   And the same is true of incidence
21   of crime.  Let me take an example.  If one
22   neighborhood has an incidence of crime of one
23   per thousand and another 1.4 per thousand,
24   that doesn't make the first not dangerous and
25   the second dangerous, correct, necessarily?
```



```
 1                    T. DiPrete
 2        A.    Not necessarily, that's correct.  I
 3  mean one neighborhood is more dangerous than
 4  the other if that accurately captures its
 5  crime rate.
 6        Q.    But neither might be dangerous?
 7        A.    Well, dangerous is a more or less
 8  situation.
 9        Q.    It's a subjective perception, is it
10  not?
11              MR. DeCAMP:  Objection to form.
12        A.    Well, I said something different.
13  I said that it's a more or less.
14        Q.    You apply a relative standard, not
15  an absolute one, in your analysis?
16        A.    That's correct, if by that -- well,
17  I don't have an absolute standard threshold
18  by which I would say that above that
19  threshold the neighborhood is dangerous and
20  below that threshold it is not.
21        Q.    That's all.
22        A.    Okay.  I just want to make sure
23  we're on the same page.
24        Q.    So then I take it it would be fair
25  to say that you interpret the results of your
```



```
 1                     T. DiPrete
 2   fair to say that a linear regression equation
 3   of the kind of the OLS type you used is a
 4   generalized form of averaging in the sense
 5   that it links the means of joint
 6   distributions of each of the independent
 7   variables with the dependent variable?
 8        A.   Well, you're fitting a model under
 9   conditional means on the dependent variable.
10        Q.   It's a form of averaging it would
11   not be --
12        A.   Well, I don't know --
13        Q.   -- unfair to say.
14        A.   -- exactly what you mean by a form
15   of averaging, so.
16        Q.   Well, I just looked at what many of
17   your colleagues or many -- if Franklin
18   Fisher, for example, defines it as such in
19   the Columbia Law Review, would you find the
20   characterization of a form of averaging to be
21   inaccurate?
22        A.   No.  I'm happy with that.  I mean,
23   again, it all depends where you're going.  So
24   if you end up in a place that I don't agree
25   with, I will --
```



```
 1                    T. DiPrete
 2        Q.    Then you'll tell me.
 3        A.    I will tell you.
 4        Q.    Okay.  No sense to bark before
 5   you're bit.  Where I'm going is here.  Your
 6   regression analysis enables you to draw a
 7   generalization about what is or is not the
 8   case with respect to route assignments for
 9   African Americans and whites on average;
10   isn't that true?
11        A.    Yes.
12        Q.    It doesn't allow you to make
13   statements about what is the case for
14   specific claimants or observations?
15        A.    That's correct.
16        Q.    Okay.  That wasn't too sinister,
17   was it.
18        A.    As I said, I'm just...
19        Q.    The data you used for your
20   regressions aggregates all the route
21   assignments by race made by every supervisor
22   at a given station during the relevant
23   period; isn't that true?
24        A.    That's correct.
25        Q.    So you didn't look at route
```



1

2                    C E R T I F I C A T E

3    STATE OF NEW YORK          )

4                               : ss.

5    COUNTY OF WESTCHESTER      )

6

7           I, JOAN WARNOCK, a Notary Public

8    within and for the State of New York, do

9    hereby certify:

10          That THOMAS DiPRETE, the witness

11   whose deposition is hereinbefore set

12   forth, was duly sworn by me and that

13   such deposition is a true record of the

14   testimony given by the witness.

15          I further certify that I am not

16   related to any of the parties to this

17   action by blood or marriage, and that I

18   am in no way interested in the outcome

19   of this matter.

20          IN WITNESS WHEREOF, I have hereunto

21   set my hand this 18th day of August,

22   2015.

23

24                              

25                              JOAN WARNOCK